No. A-CV-08-91
# Supreme Court of the Navajo Nation

**Edison Nelson, Appellant,**
v.
**Basin Motor Company, Appellee.**
**Decided July 11, 1991**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Lee R. Belone, Esq., Window Rock, Navajo Nation (Arizona), for the Appellant; and Samuel Pete, Esq., Shiprock, Navajo Nation (New Mexico), for the Appellee.

Opinion delivered by AUSTIN, Associate Justice.

This appeal is from a decision of the Shiprock District Court, which dismissed a complaint for wrongful repossession of a vehicle, and granted a counterclaim for contract deficiencies. The primary issue on appeal is whether the district court erred in ruling that the act of repossession did not take place within the territorial jurisdiction of the Navajo Nation, whereby 7 N.T.C. § 607 (1985) was inapplicable. That statute places restrictions upon the repossession of personal property within the Navajo Nation. The decision of the district court is affirmed.

### I

On November 21, 1985, Appellant Edison Nelson entered into a retail installment sales agreement with Appellee Basin Motor Co., Inc., an automobile dealership, for the purchase of a 1986 half-ton pickup truck. The purchase agreement was signed at Farmington, New Mexico, a municipality located outside the territory of the Navajo Nation. The agreement contains a standard clause which assigned the seller's interest to General Motors Acceptance Corporation (GMAC). That clause provides that in the event a buyer defaults, the seller (Basin) would pay GMAC the unpaid balance under the contract and indemnify GMAC for all losses or expenses incurred as a result of the breach.

Nelson's payment record shows that he made payments directly to GMAC and to Basin. The payments were often delinquent, so Nelson was frequently assessed late charges, and on two occasions Basin made "dealer advances" to GMAC to avoid repossession by it.

On January 13, 1988, Nelson called Basin to request that a tow truck be sent to Table Mesa to tow the pickup truck to the dealership (Basin) in Farmington.

Table Mesa is within the boundaries of the Navajo Nation, and it is approximately 15 miles south of Shiprock, Navajo Nation (New Mexico). Nelson told Basin's agent that the pickup truck was disabled.

When the tow truck arrived, Nelson rode in it, with his pickup truck in tow, into Farmington. He signed an authorization form which permitted both the towing and the repair of the vehicle. Basin's representatives told Nelson that the vehicle's engine was severely damaged, and parked it in a secured storage area known as "the bull pen."

When Nelson learned of the extent of damage to the engine, he requested to trade the pickup truck for another. In the process of making a credit check for such an arrangement, Basin found that Nelson was in arrears on his account. He had not made payments for two months. Basin then advised Nelson that the pickup truck was subject to repossession for nonpayment. Nelson was further advised that if the vehicle was not redeemed by bringing the account current by March 17, 1988, it would be sold. Nelson did not make the payments, and the vehicle was sold on April 30, 1988. The loss on the sale, including payments owing and repossession-related charges, was $977.44.

On September 13, 1989, Nelson filed an action for wrongful repossession under 7 N.T.C. §§ 607-610, and on October 25, 1989, Basin counterclaimed for damages for breach of the retail installment sales agreement. The record of the action shows that the district court conducted a full evidentiary hearing on the case, receiving exhibits showing all the transactions between the parties.

On appeal, Nelson claims that the district court erred in the application of the Navajo repossession law, and that the court erred on the amount of damages for the counterclaim.

## II

General American consumer law, with some exceptions, allows self-help repossession of secured property upon default. In 1985, the Navajo Tribal Council enacted comprehensive legislation which prohibits self-help repossession of personal property within the Navajo Nation, and fixes certain limitations upon repossession. In essence, the law permits the repossession of personal property only with the written consent of the purchaser at the time of repossession, or repossession pursuant to a court order. 7 N.T.C. § 607. The legality of the law, as a valid consumer protection statute, has been sustained by the federal courts. *Babbitt Ford v. Navajo Tribe*, 710 F.2d 587 (9th Cir. 1983), *cert. denied*, 104 S. Ct. 1707 (1984).

Central to this case is the question of whether Nelson's wrongful repossession claim satisfied the requirement of the statute that the personal property "be taken from the territorial jurisdiction of the Navajo Nation." 7 N.T.C. § 607. That area includes all land within the exterior boundaries of the Navajo Indian Reservation, the Eastern Navajo Agency, any dependent Navajo Indian community, all Navajo Indian allotments, and any other land held by the United States for the benefit of the Navajo Tribe or any band of Navajo Indians. 7 N.T.C. § 254 (1985).

The district court found that the repossession of Nelson's vehicle actually took place at Farmington, New Mexico, outside the territorial jurisdiction of the Navajo Nation. Nelson did not present anything on appeal to show that the district court's finding on the place of repossession is erroneous. He certainly did not file a transcript for our review.

Our construction of the repossession statute is important, because self-help repossession outside the Navajo Nation is generally permissible, while such conduct within the Navajo Nation is illegal. This case raises questions concerning the applicability of our repossession statute where the chain of events leading to repossession begins within our territorial jurisdiction.

On appeal, Nelson argues that while he initiated the action which culminated in the act of repossession in Farmington, he did not intend to allow a repossession. Apparently, he believes that he gave only limited consent for towing the vehicle to Farmington for repairs, or perhaps some kind of limited bailment. He argues that Basin did not advise him of the possibility of repossession, either when he called for the tow, or as the pickup truck was being towed. This is a very weak assertion. The uncontroverted evidence is that Nelson voluntarily triggered the events which ended in repossession, and he knew or was in a position to know that he was at least two months delinquent in his payments. If Nelson wanted the protection of Navajo Nation law, he should not have initiated the act which removed the vehicle from the provisions of that law.

There may be occasions when Navajo Nation law will follow a vehicle outside the territorial jurisdiction mentioned in the repossession statute. There may be occasions of fraud, false representation, fraudulent inducement, wrongful enticement, etc., when the strict requirements of the statute will apply. Any creditor making minimum contacts with the Navajo Nation in person, by mail, by telephone, or otherwise, may be subject to the requirements of the repossession law, in a proper case. Here, we hold that because Basin did not initiate the act of repossession and did not commit any wrongful act within the Navajo Nation, the district court properly found that the repossession took place outside our territorial jurisdiction. The Navajo Nation repossession law does not apply under the facts of this case.

### III

Nelson also argues as follows: (1) The district court did not give him credit for certain payments made; (2) Basin did not show adequate proof of charges after repossession, i.e. storage costs, refurbishing costs, etc.; and (3) Basin could not claim damages because of the assignment to GMAC.

The district court's finding that GMAC had recourse to Basin for unpaid contract amounts and repossession damages is sustained by the record. The district court received ample exhibits and arguments on the issue of the nature and amount of damages, and we find no error in the findings of fact sufficient to jus-

tify a modification of them. We will not disturb the findings of fact of a lower court unless they are clearly erroneous, and Nelson did not demonstrate that the findings of the lower court were clearly erroneous in this case. He did not file a transcript, as required by the rules of appellate procedure, nor did he show any inconsistency between the record before this Court and the findings. The district court judge was in the best position to consider the exhibits in conjunction with the testimony and demeanor of the parties, and there is nothing to show that the factual conclusions reached by that judge were incorrect.

The district court judgment is therefore affirmed.